SAMUEL STURMAN and Another, Plaintiffs, *v.* JOSEPH POLITO, Defendant.

City Court of Rochester, Civil Branch, November 11, 1936.

*Leon H. Sturman,* for the plaintiffs.

No appearance for the defendant.

TOMPKINS, J.   The plaintiffs seek to replevy articles of household furniture sold under a written agreement for $576.15, and on which there is unpaid $101.25.   Their present value is fixed at $250.   Although the agreement provides for forfeiture of all sums paid, on the buyer's default, nevertheless it is a conditional contract of sale and is subject to the provisions of the Uniform Conditional Sales Act. (Pers. Prop. Law, § 61, definition of " conditional sales.")

The defendant defaulted, and the plaintiffs move for judgment and put the contract in evidence.

The contract, largely printed, prepared by the seller and executed by the buyer, whose enforcement is demanded, recites that the goods sought to be replevied were delivered to the defendant " on the following condition: "

(1) That if the buyer pay the seller the stipulated amounts, on final payment, the seller will deliver a receipted bill therefor; (2) that until paid, the buyer acquires no right, title or interest thereto; (3) that on default of any payment or part thereof, the contract at the seller's option shall, without notice, be deemed annulled and all sums paid thereby forfeited; and (4) that the seller is authorized, without demand or notice, to enter by force with or without due process of law any premises occupied by the buyer and by force seize and remove said merchandise; and (5) that for such seizure the seller shall not be subject civilly or criminally therefor; and (6) that the buyer releases all right of action for whatever is done by the seller in obtaining possession of said merchandise; (7) that no part of said contract shall be deemed rescinded as against the seller, unless in writing, signed by the seller.

Unquestionably, the consideration for the delivery of the merchandise in question was the agreement of the buyer not only to pay the stipulated price, but also his consent that, in case of default,

he would forfeit all sums paid, and would permit the seller to retake the merchandise by force and without due process of law.

What is the effect upon the sellers' rights of their inserting in the contract of sale this amazing provision that they may without demand or notice enter the buyers' premises and by force with or without due process of law seize said merchandise without civil or criminal liability therefor? That these provisions are null and void as against public policy needs no argument. They not only permit unlawful entry by force, and violate the protective provision of the Uniform Conditional Sales Act (Pers. Prop. Law, §§ 60 *et seq.*), but they offend the conscience of all who believe in and uphold the orderly processes of law. (*Reiner* v. *North American Newspaper Alliance*, 259 N. Y. 250, 261; *Materne* v. *Horwitz*, 101 id. 469; *Kirshenbaum* v. *General Outdoor Advertising Co.* 258 id. 489, 494.)

It taxes one's credulity to assume these provisions were inserted with an actual belief they would become a protecting shield if illegally acted on. If inserted to be used as a threatening bludgeon to the timid, the unfortunate and the ignorant, they are as equally reprehensible.

Although the defendant is in default and no answer has been filed, it is unnecessary to plead the illegality of the contract as being contrary to public policy. The court, of its own motion, may deny the right to relief thereunder, whether an answer be filed or not, when it appears that such contract is antagonistic to the interest of the public. (*Attridge* v. *Pembroke*, 235 App. Div. 101, 102, and cases cited.)

Are these provisions an integral part of the contract of sale? The contract states that they are a part of the conditions upon which the seller delivered the goods. It further provides that no portion of the contract shall be deemed rescinded unless such rescission is in writing, signed by the seller. No such rescission has been made. The contract in its entirety is before the court.

Stripping the agreement of its illegal members, what remains? This: The defendant admits the receipt of the merchandise in question, and agrees to pay a stipulated price therefor. On payment in full the buyer is to obtain title. This much does not offend the law. Section 76 of the Personal Property Law provides that on the buyer's default in payment the seller may retake the goods peacefully or by legal process. The buyer has defaulted, and the sellers sue in replevin. May the seller who exacted consent to an unlawful remedy now command a lawful remedy?

Where a seller as a condition of sale exacts the buyer's consent to illegal remedy, it would seem, at least morally, that this flaunting

the illegal and flouting the lawful should void the entire contract and bar him from the remedy given by law to law-abiding sellers on the buyer's default. Yet I have found no case so holding. It seems to be the illegal act rather than the unlawful threat or promise that is banned. Timely repentance of the unlawful threat seems illogically enough to be rewarded with forgiveness in the form of lawful remedy.

While it has been said that illegality of a part of the consideration voids the entire contract (*Stone* v. *Young,* 123 Misc. 120), that statement is too broad. The case cited was an action to collect on a subscription for preferred stock sold upon an illegal agreement as to payment of dividends thereon. Of course, the plaintiff could not enforce a contract, a part of whose terms he could not, because of illegality, perform. The illegal part of a consideration which voids the whole contract is something either already performed or is still an obligation of the plaintiff's to perform; not an illegal remedy which the enforcer may forego. Where the illegal part may be severed, and leave a complete valid contract, the valid part will be enforced. (*Norwalk* v. *Marcus,* 235 App. Div. 211.) The courts seem to have condoned the exaction of an illegal remedy which the exactor, through fear or penitence, has not sought to enforce. Consequently, the plaintiffs herein may replevy the goods under section 76 of the Personal Property Law, if the buyer is in default.

The plaintiffs ask for an alternative judgment for $250 as the value of the chattels in question. The amount unpaid on their purchase price is $101.25. The amount unpaid on goods sold under a conditional contract of sale should limit the amount of the money judgment conditioned upon the failure to retake the goods.

Section 117 of the Justice Court Act, which is similar to section 1124 of the Civil Practice Act, provides that where the chattel has not been replevied, the final judgment must award the plaintiff the sum fixed as the value thereof to be paid by the defendant, if possession thereof is not delivered to the plaintiff, except in the case where the judgment is not so required, as provided in preceding section 116. Section 116 of the Justice Court Act (Civ. Prac. Act, § 1121) provides that where the plaintiff is the " general owner " of the chattel, the defendant having a " special property " therein which is less than the value of the chattel or the sum charged thereon by reason thereof, then the value of the " special property " of the defendant must be fixed and set forth in the judgment. The meaning of the term " general owner " is not defined in the statute. The Court of Appeals defined it in *Farmers & Mechanics' National*

*Bank of Buffalo* v. *Logan* (74 N. Y. 568, at p. 581), as being such ownership as gave a person the right to enjoy or destroy at pleasure the thing owned. Such destruction could legally be made only with the assent of both seller and buyer. While the contract in question provides that the buyer obtains no title or interest in the goods and that on default he forfeits all he has paid, these provisions, as stated, are void as violative of the provisions of the Uniform Conditional Sales Act. Although the legal title remains in the seller, each party to the sale has a special interest or property in the chattels. The seller's interest is limited to the amount of the purchase price unpaid; the buyer's is the chattel's value less the unpaid purchase price.

While the parties to a conditional sale do not expressly come within the provisions of section 1121 of the Civil Practice Act (Justice Ct. Act, § 116), yet the procedure in a replevin action must be construed so as not to violate the remedial provisions of the Uniform Conditional Sales Act (Pers. Prop. Law, §§ 60 *et seq.*). Section 79 thereof provides that a resale of the goods is mandatory, where either $500 or more than half of the purchase price has been paid. By section 80 the buyer may demand a resale where less has been paid. By section 80-a the seller on resale may retain only the unpaid balance of the purchase price, plus costs and expenses. By section 78 the buyer may redeem on payment of the purchase price and expenses.

Fixing the value of a " special property " in the goods has been applied to the interest of a chattel mortgagee seeking possession (*Townsend* v. *Bargy*, 57 N. Y. 665); to the lien of a mechanic who made repairs (*Cooper* v. *Kipp*, 52 App. Div. 250); to the lien of an attachment on the interest of the buyer (*Arter* v. *Jacobs*, 226 App. Div. 343, 346). Likewise it should be applied in view of the provisions of the Uniform Conditional Sales Act to the special property of the vendor in the goods. The procedural provisions governing replevin under a conditional sales contract must be construed in the light of the safeguarding requirements of the Uniform Conditional Sales Act. The amount of the purchase price unpaid should and does limit the amount of the conditional money judgment. A judgment for a sum greater than the amount unpaid would be unjust and inequitable, as well as a violation of the protecting provisions of the Uniform Conditional Sales Act.

The evidence shows the present aggregate value of all the chattels at $250. The value of each chattel should be shown and fixed. The amount of the purchase price unpaid is $101.25, which sum limits the amount of the judgment if the goods are not replevied

and delivered to the plaintiffs. If but a part of the goods are retaken, how can the amount of the money judgment conditioned on the failure to actually retake the chattels be determined, unless the value of each chattel taken has been fixed and included in the judgment? Sections 1120 and 1124 of the Civil Practice Act and sections 115 and 117 of the Justice Court Act each require the value of " the chattel " to be fixed. Essentially this means the value of each chattel and not merely the aggregate value of all the chattels. To hold otherwise would, where but a part of the chattels are delivered, frustrate the final money judgment.

There is, however, a further reason found in the contract in suit which prevents the plaintiffs from recovering in this action. The contract was signed November 21, 1929. The price of the goods receipted for on that day is $149. Thereafter other items aggregating $426.25 were added to the contract without, so far as appears, the consent of this defendant. Whatever rights the plaintiffs acquired, and whatever obligations the defendant assumed by the signing of this contract, they were limited to the agreement as it then was. By adding thereto without a re-execution by the defendant, the plaintiffs acquired no new rights nor an extension of those specified in the agreement; nor was the defendant subjected to the obligations therein set forth in respect to the additions made without his authority. The plaintiffs cannot recover in this action possession of the articles of household furniture which they added to the already executed agreement, nor may they repossess in this action any of the articles which were on the contract at the time of its execution aggregating $149.90; for the reason that it appears from indorsements of payments on the back of the contract that these articles were first purchased, and consequently have already been paid for. (*Stanwix* v. *Leonard*, 125 App. Div. 299, 301.)

Judgment for the defendant, dismissing the complaint on the merits.